**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| MICHAEL EVITT, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK NA, <br><br> Defendant. | NO. 3:23-cv-6121 <br><br> PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT |

COMES NOW, Plaintiff, MICHAEL EVITT, by and through his counsel, ROBERT MITCHELL, and complains against the Defendant as follows:

## I.  STATEMENT OF THE CASE

Mr. Evitt served in Special Operations while in the US Military, where he was injured while on active duty.  Mr. Evitt is now an honorably discharged, service-connected, disabled veteran who works in cybersecurity for the Department of the Navy.  Mr. Evitt protects our nation's nuclear secrets from our enemies.  To maintain this coveted position of employment, Mr. Evitt is required to maintain a security clearance.  To maintain his security clearance, Mr. Evitt is required to maintain positive credit history.  A mark on his credit will cost Mr. Evitt his security clearance, which in turn will cost Mr. Evitt his job.  Therefore, Mr. Evitt's credit is of the utmost importance and injury to his credit is devastating.

FCRA COMPLAINT           1            Robert Mitchell, Attorney at Law
                                       1020 N. Washington
                                       Spokane, WA  99201
                                       (509) 327-2224    Fax (888) 840-6003

Mr. Evitt was the victim of online fraud. A fraudster hacked Mr. Evitt's Wells Fargo account and established 18 separate bill pays to 2 separate Bank of America credit cards. Each bill pay was just under $1,000. The total fraud was just under $18,000. On that same day, the fraudster established overdraft protection with Mr. Evitt's Wells Fargo credit card.

Wells Fargo made the $18,000 transfer to the two Bank of America credit cards, drained Mr. Evitt's checking account, and then placed the remaining balance on Mr. Evitt's Wells Fargo credit card. Mr. Evitt has never had a Bank of America credit card or Bank of America account. He did not authorize the payments. Wells Fargo knows this, because an Arbitrator declared as a matter of law that Mr. Evitt never owed the money and ordered Wells Fargo to refund Mr. Evitt's money, eliminate the erroneous balance from Mr. Evitt's credit card, cease collecting the erroneous balance, and cease credit reporting the erroneous balance. *See* **Exhibit A**, Arbitrator's "Final Award," dated November 17, 2023. Wells Fargo refuses to abide by the Arbitrator's ruling, continues attempts to collect the account, and continues credit reporting the erroneous account balance.

On December 6, 2023, Wells Fargo sent Mr. Evitt a bill demanding a $505 monthly payment for the erroneous balance. *See* **EX. B**. On December 6, 2023, Wells Fargo was still credit reporting the account on Mr. Evitt's credit reports. **EX. C**. What is worse, on November 30, 2023, Mr. Evitt disputed the account to Trans Union. **EX. D**. On December 6, 2023, despite the Arbitrator's ruling and despite knowing that the credit card balance was erroneous, Wells Fargo's response to Trans Union stated: "**VERIFIED AS ACCURATE**." **EX. E** (Emphasis added).

Given the above, Wells Fargo failed to conduct a reasonable reinvestigation in response to Mr. Evitt's dispute, which violated 15 U.S.C. 1681s-2(b). Wells Fargo's failures caused injury and damage to Mr. Evitt's character, reputation, employment, and finances. Mr. Evitt has also suffered significant emotional distress as a direct and proximate result of Wells Fargo's statutory violations.

## II. PARTIES

2.1  Plaintiff, MICHAEL EVITT is a resident of Kitsap County, Washington.

2.2  Plaintiff obtained a credit card from Wells Fargo, which he used primarily for personal, family, and household purposes.

2.3  Plaintiff is therefore a "consumer" as defined by 15 U.S.C. § 1681 (the Fair Credit Reporting Act), and Plaintiff acted as a "consumer" at all times relevant to this litigation.

2.4  Defendant, WELLS FARGO BANK, N.A., (hereinafter "WELLS FARGO" or "Defendant") is a foreign bank corporation with its principal office located at 464 California Street, San Francisco, CA 94104-1204, that conducts business in the State of Washington, pursuant to UBI No. 601 742 563.

## III. JURISDICTION AND VENUE

Jurisdiction and Venue in the United States District Court, Western District of Washington, are appropriate where this dispute involves predominant issues of federal law, and where all acts at issue and described herein occurred in this district, and where the injury to Plaintiff occurred in this district, and where Plaintiff is a resident of this district, and where the Defendant engages in substantial business in this district, and where Defendant has already

availed itself of the courts in this district. (28 U.S.C. § 1332; 28 U.S.C. § 1391(b); and 28 U.S.C. § 1331).

Defendant is liable unto Mr. Hermann pursuant to the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et. seq., as well as other applicable state and federal laws, which claims may be brought under this Court's supplemental jurisdiction.

### IV.  FACTS

4.1   Between <u>2011</u> and <u>2015</u>, Wells Fargo was penalized **tens of millions of dollars** for its participation in the <u>2008</u> Mortgage Crisis that brought this Country to its knees, as well as Wells Fargo's failure to follow Consent Decrees intended to ameliorate future bad behavior.

4.2   In <u>2015</u>, an audit by the Office of the Comptroller of the Currency found deficiencies in Wells Fargo's internal controls related to the Bank Secrecy Act and Anti-Money Laundering rules.

4.3   In <u>2015</u>, Wells Fargo was fined another **$81.6 million** for violations of bankruptcy laws.

4.4   In <u>2016</u>, Wells Fargo was fined another **$70 million** for violations of bankruptcy laws.

4.5   In <u>2016</u>, Wells Fargo entered settlements with the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency, and the City of Los Angeles, for opening unauthorized deposit and credit accounts without the customer's knowledge.

4.6   The total settlements amounted to **$185 million**.

4.7    Wells Fargo also entered into a **$142 million** settlement for similar practices. *See Jabbari v. Farmer*, No. 18-16213, No. 18-16236, No. 18-12685, No. 18-16317, 2020 WL 4048683 (9th Cir. July 2020).

4.8    In 2018, Wells Fargo entered into a **$1 Billion** consent agreement with the Consumer Financial Protection Bureau and the Office of the Comptroller of the Currency, for charging Wells Fargo customers unnecessary fees.

4.9    In 2018, Wells Fargo agreed to pay **$575 million** to resolve claims with 50 states and the District of Columbia, relating to Wells Fargo's practice of opening accounts without customer consent, *inter alia*.

4.10    In 2021, Wells Fargo agreed to pay **$3 billion** to resolve Department of Justice allegations that Wells Fargo employees created thousands of fake customer accounts.

4.11    In 2021, **Wells Fargo admitted that it collected millions of dollars in fees and interest to which it was not entitled**, harmed certain customers' credit, and unlawfully misused customers' personal information.

4.12    Most recently, Wells Fargo has been experiencing rampant fraud related to Zelle, an online bill pay platform owned by Wells Fargo. *See* Senator Warren's Report, entitled: "**Facilitating Fraud: How Consumers Defrauded on Zelle are Left High and Dry by the Banks that Created It**." *See also Id.* at p. 1, stating in pertinent part: "**Fraud and theft are rampant on Zelle – and are increasing**." (Emphasis in Original).

4.13  On April 28, 2022, the same day as the fraud in question, Plaintiff received an email from Wells Fargo, stating in pertinent part: "**Your Email has been removed from Zelle because there is a problem with it**…"

4.14  Despite the above email, Wendy Hernandez, a Wells Fargo representative, testified under oath that Wells Fargo does not own Zelle, and that Wells Fargo would not send Plaintiff an email concerning his Zelle account.

4.15  Wendy Hernandez's sworn testimony was patently false.

4.16  Contrary to Wendy Hernandez's sworn testimony, Wells Fargo does own "Zelle." *See* July 20, 2022, US Senate Committee on Housing, Banking, and Urban Development, official website post entitled: "**Hold Banks That Own Zelle Accountable for Inadequate Protections to Stop Fraudulently Induced Payments to Crooks**," stating in pertinent part: "**Zelle's network operator, Early Warning Services LLC, is owned by seven major banks: Bank of America, Capital One, Chase, PNC Bank, Truist, U.S. Bank and Wells Fargo**." (Emphasis added). *See also* March 2, 2023, US Senator Jack Reed's official website post entitled: "**To Help Americans Keep Their Money Safe, U.S. Senators Urge Regulators to Hold Zelle Accountable for Inadequate Protections to Stop Fraudulently Induced Payments to Crooks**," stating in pertinent part: "**Further, the U.S. Senators are also urging the OCC and Federal Reserve Board to more rigorously examine Early Warning Services, LLC (EWS) on an ongoing basis.  EWS operates the Zelle network and is owned by seven of the Nation's largest banks (Bank of America, Truist, Capital One, JPMorgan Chase, PNC Bank, US Bank and Wells Fargo)**."  (Emphasis added).

4.17  In addition to Wells Fargo's long history of abusing its own customers, Wells Fargo has now engaged in abusing consumers who have never had an account with Wells Fargo. *See Patterson v. Wells Fargo et al*., US Dist. Court for the ND Cal., Civil Cause No. 3:23-cv-3858, ECF No. 1.

4.18  Plaintiff is an honorably discharged, service-connected disabled veteran, who served in Special Operations.

4.19  Plaintiff is currently employed in cybersecurity by the Department of the Navy.

4.20  Plaintiff's job is to protect our nation's nuclear secrets from our enemies.

4.21  Plaintiff has impeccable credit.

4.22  Plaintiff has had an account with Wells Fargo since 1996.

4.23  Plaintiff also has a Wells Fargo credit card.

4.24  Plaintiff was the victim of fraud and theft related to his Wells Fargo checking account and credit card.

4.25  On April 28, 2022, someone accessed Plaintiff's Wells Fargo account and established 18 bill pays to 2 separate Bank of America credit cards.

4.26  Each bill pay was approximately $999.

4.27  The fraud totaled just under $18,000.

4.28  On April 28, 2022, someone also established overdraft protection on Plaintiff's Wells Fargo credit card.

4.29  Plaintiff did not previously use bill pay on his Wells Fargo account.

4.30  Plaintiff has never had a Bank of America account or credit card.

4.31  Plaintiff did not authorize the bill pays. *See* **Exhibit A**, Arbitrator's "Final Award."

4.32  Plaintiff did not authorize the overdraft protection. *Id.*

4.33  On May 6, 2022, Plaintiff learned about the fraud.

4.34  On May 6, 2022, Plaintiff filed a fraud report with Wells Fargo.

4.35  On May 6, 2022, Plaintiff filed a police report with Kitsap County Sheriff's Office, Case No. K22-004672.

4.36  Plaintiff also filed reports with the Consumer Financial Protection Bureau, the Federal Trade Commission, the Office of the Comptroller of the Currency, and the Federal Bureau of Investigation.

4.37  Wells Fargo assigned Wendy Hernandez to investigate.

4.38  In August of 2022, Wendy Hernandez wrote the following in emails to her colleagues:

> A) "**18 bill pays all for $999.99 going to BofA on the same day?**"
>
> B) "**This is the first instance of any bill pay activity I can find.**"
>
> C) "…**it looks like overdraft protection was added to the account on 4/28/22. The credit card used for OD protection <u>funded the fraud</u>. Trying to see if there is a connection**."
>
> D) "**Would there have been any "red flag" or anything that would alert the bank of suspicious bill pay activity?**"

FCRA COMPLAINT    8    Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224    Fax (888) 840-6003

4.39  Wendy Hernandez received the following responses from her colleagues: A) "**Regarding red flags mentioned…it boils down to alert volumes and staffing**…" and B) The response continued: "**I couldn't tell you why this specifically didn't alert, unfortunately**."

4.40  Finally, Wendy Hernandez received a response *admitting* that the amounts of the bill pays was suspicious: "**The only thing suspicious about this case to me is the amounts of the transactions**…"

4.41  Wells Fargo knew that the transactions were fraudulent.

4.42  Wells Fargo refused to remove the fraudulent balance from Plaintiff's Wells Fargo credit card, refused to refund Mr. Evitt's money, and continued forcing Mr. Evitt to make $500+ per month payments on the fraudulent account balance.

4.43  On January 9, 2023, Plaintiff filed disputes with the three major Credit Reporting Agencies (TransUnion, Equifax, and Experian).

4.44  Plaintiff's disputes included:

A) A copy of the Police Report Plaintiff filed with Kitsap County;

B) Plaintiff's complaint to the Consumer Financial Protection Bureau;

C) Plaintiff's complaint to the Federal Trade Commission;

D) Plaintiff's complaint to the Office of the Comptroller of the Currency; and

E) Plaintiff's Online Affidavit of Fraud filed with Wells Fargo.

4.45  TransUnion, Equifax, and Experian provided Wells Fargo with copies of Plaintiff's disputes.

4.46 Wells Fargo failed to conduct a reasonable reinvestigation in response to Plaintiff's disputes to the Credit Reporting Agencies.

4.47 Wells Fargo "**VERIFIED**" the erroneous account balance as "**ACCURATE**."

4.48 Wells Fargo refused to do the right thing and continued forcing Plaintiff to pay the fraudulent balance Wells Fargo placed on Plaintiff's Wells Fargo credit card.

4.49 In July of 2022, Plaintiff initiated a lawsuit against Wells Fargo by serving Wells Fargo with an unfiled Summons and Complaint.

4.50 Wells Fargo compelled arbitration.

4.51 On November 17, 2023, the Arbitrator declared as a matter of law that Mr. Evitt never owed the money, and ordered Wells Fargo to refund Mr. Evitt's money, eliminate the erroneous balance from Mr. Evitt's credit card, cease collecting the erroneous balance, and cease credit reporting the erroneous balance. See **Exhibit A**, Arbitrator's "Final Award," dated November 17, 2023.

4.52 The "Final Award" required Wells Fargo to accomplish the above within 15 days.

4.53 The deadline for compliance was no later than December 4, 2023.

4.54 Wells Fargo refused to abide by the Arbitrator's ruling, continues attempts to collect the account, and continues credit reporting the erroneous account balance.

4.55 On December 6, 2023, Wells Fargo demanded that Mr. Evitt make a $505 monthly payment for the erroneous balance. See **EX. B** (Wells Fargo Bill).

4.56 On December 6, 2023, Wells Fargo was still credit reporting the account on Mr. Evitt's credit reports. **EX. C**. (Redacted Credit Report).

4.57    On November 30, 2023, Mr. Evitt disputed the account to Trans Union. **EX. D** (Dispute).

4.58    On December 6, 2023, despite the Arbitrator's ruling and despite knowing that the credit card balance was erroneous, Wells Fargo's response to Trans Union stated: "**VERIFIED AS ACCURATE**." **EX. E** (Dispute Response) (Emphasis added).

4.59    As of December 8, 2023, Wells Fargo has failed to refund Mr. Evitt's money as ordered by the Arbitrator.

4.60    As a direct and proximate result of Wells Fargo's failure to conduct reasonable reinvestigations, the fraudulent account balance is still reporting on Plaintiff's credit reports to this very day.

4.61    As a direct and proximate result of Wells Fargo's failure to conduct reasonable reinvestigations Plaintiff has been forced to continue making minimum payments on the fraudulent account because he fears that Wells Fargo will report a default if he stops paying on the account.

4.62    A default would have an adverse effect on Plaintiff's security clearance.

4.63    As a direct and proximate result of Wells Fargo's failure to conduct reasonable reinvestigations Plaintiff's credit score decreased because the fraudulent account balance is so high.

4.64    This is a patently obvious case of fraud and theft that Wells Fargo refuses to stop credit reporting.

4.65    Defendant's actions are unreasonable.

4.66  Defendant's actions are intentional.

4.67  Defendant's actions are willful.

4.68  Defendant's unreasonable, intentional, and willful actions caused Plaintiff injury and damages.

4.69  Defendant's unreasonable, intentional, and willful actions are the direct and proximate cause of Plaintiff's injuries and damages.

## V.   FIRST CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation)

(15 U.S.C. § 1681s-2(b))

**(Wells Fargo)**

5.1  Mr. Evitt re-alleges paragraphs I. through IV., inclusive as though fully set forth herein.

5.2  Wells Fargo is reporting to the Credit Reporting Agencies that Mr. Evitt owes a $14,000 credit card debt.

5.3  Wells Fargo's reporting is inaccurate and erroneous.

5.4  On November 30, 2023, Mr. Evitt disputed the erroneous account to Trans Union, a Credit Reporting Agency.

5.5  The Trans Union informed Wells Fargo about Mr. Evitt's dispute.

5.6  The fact that Mr. Evitt does not owe the debt was readily apparent from the Wells Fargo's own records, particularly the Arbitrator's "Final Award."

5.7     A reasonable reinvestigation in response to Mr. Evitt's dispute would have included examining the documents that pertain to the account, particularly the Arbitrator's "Final Award."

5.8     If Wells Fargo had conducted a reasonable reinvestigation, Wells Fargo would have learned that Mr. Evitt does not owe the account.

5.9     Wells Fargo failed to conduct a reasonable reinvestigation into the status and character of the account in response to Mr. Evitt's disputes.

5.10    Instead, Wells Fargo responded to Trans Union that the account was "VERIFIED AS ACCURATE." **EX. E**.

5.11    As a result, the Credit Reporting Agency continued credit reporting the erroneous account.

5.12    Creditors or furnishers of information to credit reporting agencies do not fulfill their respective duties to conduct a reasonable investigation into the accuracy and validity of a disputed account simply by reciting the information which is already contained within the consumer credit or account file. *Diprinzio v. MBNA America Bank, N.A.*, 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005).

5.13    Wells Fargo violated 15 U.S.C. § 1681s-2(b), by failing to fully and properly investigate Mr. Evitt's disputes; by failing to review all relevant information regarding same; by failing to accurately respond to the CRA; by failing to correctly report results of an accurate investigation to the CRAs; and by failing to permanently and lawfully correct its own internal

records to prevent the re-reporting of the false representations to the CRAs, among other unlawful conduct.

5.14   As a result of Wells Fargo's conduct, action, and inaction, Mr. Evitt suffered injury and damage, and continues to suffer actual damages, including economic loss, damage to character and reputation, emotional distress, and interference with Mr. Evitt's normal and usual activities, for which Mr. Evitt seeks damages in an amount to be determined by the jury.

5.15   Wells Fargo's conduct, action, and inaction were willful, rendering it liable to Mr. Evitt for punitive damages, pursuant to 15 U.S.C. § 1681n.

5.16   In the alternative, Wells Fargo was negligent, entitling Mr. Evitt to recover damages, pursuant to 15 U.S.C. § 1681o.

5.17   Mr. Evitt is entitled to recover costs and attorney's fees from Wells Fargo, pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered against Wells Fargo as follows:

A.   For Actual, Compensatory, and General damages, in an amount to be proven at trial, pursuant to 15 U.S.C. § 1681 *et seq.*;

B.   For Statutory damages, in the amount of $1,000, pursuant to 15 U.S.C. § 1681 *et seq.*;

C.   For Incidental and Consequential damages, in an amount to be proven at the time of trial, pursuant to 15 U.S.C. § 1681 *et seq.*;

D.   For Punitive damages, in an amount to be proven at the time of trial, pursuant to 15 U.S.C. § 1681 *et seq.*;

E.   For costs and reasonable attorneys' fees, in an amount to be proven at trial, pursuant to 15 U.S.C. § 1681 *et seq.*;

F.   For interest on the above amounts as authorized by law;

G.   For other relief as the Court deems just and equitable; and

H.   For leave to amend this complaint as needed and as required, including leave to seek Fed. R. Civ. P. 23 status, if information becomes available through discovery supporting numerocity, commonality, and the need for class action status.

## VII.   REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests a trial by jury.

DATED this 8th day of December, 2023.

Respectfully submitted,

s//*Robert W. Mitchell*
ROBERT MITCHELL, WSBA #37444
Attorney for Plaintiff