# EXHIBIT

# A

AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Case Number: 01-22-0004-6396

Michael Evitt
-vs-
Wells Fargo Bank

## AWARD OF ARBITRATOR

I, Katherine Hendricks, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, Claimant represented by Robert Mitchell and Sara Ellen Hutchison, and Respondent represented by Kelly H. Dove, at evidentiary hearings held on August 29 and 30, 2023, do hereby issue this AWARD as follows:

This is an arbitration for damages and injunctive relief for violations of the Washington Consumer Protection Act, RCW 19.83 ("WCPA"), breach of contract, and the Unfair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) arising out of alleged unauthorized transactions in Claimant's checking and credit card accounts.

Claimant's account records reflect that on April 28, 2022 a Bill Pay function and overdraft protection were added to his checking account. On May 3, 2022, 18 separate transfers of just under one thousand dollars each, totaling $17,999.01, were made from Claimant's account to pay two separate Bank of America credit cards. With overdraft draft protection, once all funds from Claimant's checking account were depleted, cash advances totaling $16,878.34 were added as charges to Claimant's credit card. Wells Fargo has required Claimant to repay the credit card balance with interest at variable rates that began as 24.24 percent in May 2022 and by July 2023 (the last date for which information was provided) was 28.99 percent.

Claimant has made minimum payments, generally a little over $500 per month. To the dates of the hearing on August 29 and 30, 2023, Claimant had paid Wells Fargo approximately $9,000. Additional payments for September, October and November would add approximately $1500. At current minimum payments, Wells Fargo estimates that Mr. Evitt will have paid approximately $48,587 in principal and interest by the time the $16,878.34 debt is paid in approximately 28 years.

Claimant seeks money damages and an injunction preventing Wells Fargo from collecting additional money from him to pay the credit card balance and from reporting to credit agencies an unpaid debt, or a dispute not resolved in Mr. Evitt's favor.

### Facts

Mr. Evitt is 35. He served in Army Special Forces and is serviced-disabled. He and his wife live in Kitsap County, Washington, and he works as a civilian information security officer at the Bremerton Naval Shipyards.

Mr. Evitt has maintained a checking account with Wells Fargo since 1996. He testified that he never did business with Bank of America and never had a Bank of America credit card. He testified that he did not enable

overdraft protection for his checking account or set up Bill Pay and did not make or authorize anyone to make payments to the Bank of America credit cards.

Mr. Evitt testified he was first alerted that something was wrong with his account on May 6, 2022, when he tried unsuccessfully to pay for a soft drink with his debit card while on a work break. He was startled because he thought he had more than $1,000 in his checking account. He then looked online at his account, learned that it had a negative balance, and discovered the May 3, 2023 Bill Pays and debiting of his credit card account for cash advances. He testified that he did not receive alerts as he would have expected from Wells Fargo for the addition of overdraft protection and Bill Pay to his account or for the Bill Pay transactions themselves. He also testified he did not receive the transferred funds or benefit from them.

The same day that he discovered the transactions (May 6), he notified Wells Fargo by telephone that there had been unauthorized transactions in his account. After speaking with Wells Fargo and advising his supervisor that he needed to leave work to address the situation, he left the shipyard and traveled to Port Orchard, Washington, where he filed a police report with the Kitsap County Sheriff's office. Subsequently, on May 14, 2023, at Wells Fargo's request, he completed an affidavit of online fraud.

Wells Fargo conducted an investigation of Mr. Evitt's claim. Apparently relying solely on its own electronic records and accepting Mr. Evitt's averments that his device had not been lost or stolen or taken over, but not his statement that he had not authorized the transactions, Wells Fargo concluded that the transactions were authorized and closed his claim. In a letter to Mr. Evitt dated June 10, 2022, Wells Fargo stated the basis for its decision as follows:

- Phone/Access device was not lost or stolen
- Devise used for transaction has more than 60-day history of use
- No password changes or failed login attempts
- Login(s) were in the Geographical location of WA, which matches customer's residential location
- Customer states there was no device takeover, and they did not receive any suspicious calls or messages

At the hearing, Wells Fargo's witness, a business execution consultant at Wells Fargo, testified that the basis for Wells Fargo's conclusion that the transactions were authorized essentially boiled down to these items: there were no password changes or failed login attempts with respect to Mr. Evitt's account and the Bank's records of online activity reflected Mr. Evitt's unique, Wells Fargo device identification number ("device ID"). Wells Fargo's witness, testified that to the best of her knowledge, the device ID could not be faked or spoofed.

Wells Fargo did not examine Mr. Evitt's computer or mobile device and did not obtain the Bank of America credit card statements. Wells Fargo's counsel stated at the hearing that Wells Fargo had subpoenaed the credit card statements, but that Bank of America refused to produce them, and consequently, Wells Fargo did not obtain them.

Two sets of credit card statements, subpoenaed by Claimant from the Bank of America after Wells Fargo's disclosure of its unsuccessful effort, reflect payments to two separate business accounts, one for an account ending in 1446 and the other in 5010, each in the name of FEC Design Service LLC, and each reflecting an individual cardholder, Ferrell Calhoun, under the LLC's account. The individual Ferrell Calhoun accounts are for account numbers *3651 (under the business account ending in 1446) and *9403 (under the business account ending in 5010). The statement for the *3651 account reflects six transfers on May 3, each described as a "BA ELECTRONIC PAYMENT". The statement for the *9403 account reflects 12 transfers on May 3, each described as a "PAYMENT –ELECTRONIC." The amounts shown as payments in each account correspond exactly to the amounts shown as transferred from Mr. Evitt's account. Thus, the amounts transferred to the *3651 account are $999.97, $999.96, $999.94, $999.95, $999.99, and $999.98, and the amounts transferred to the *9403 account are $999.89, $999.88, $999.92 $999.98, $999.97, $999.96, $999.95, $999.93, $999.94, $999.90, $999.99, $999.91.

The Bank of America credit card statements suggest highly suspicious accounts consistent with some sort of

electronic funds scam or fraud. The statements also contain many payment line items of $999+ by electronic transfer not only from Mr. Evitt, but from others, sometimes with names shown and sometimes without. According to Claimant, the Florida Secretary of State's website indicates that FEC Design Service LLC was a Florida limited liability company located in Winter Park, Florida, that has been defunct since 2016. Wells Fargo has not disputed this characterization. Most of the purchases or charges reflected are for "SQ *SSF Coders Lab LLC," "SQ *AAMCO" and "SUMUP ECMA Script Lab;" the statements reflect business locations for these entities in South San Francisco, Fresno and Lemon Grove, California.

Mr. Evitt declared that he did not know the business entity FEC Design Service LLC or the named individual cardholder, Ferrell Calhoun. He also declared he had not done business with the CODER'S LAB LLC or other businesses identified in the statements as having received charge payments from Ferrell Calhoun and did not know the individuals identified in the payment lines of the statements. Mr. Evitt reiterated that he never gave anyone authority to transfer thousands of dollars from his Wells Fargo checking account to the two Bank of America credit cards.

*Decision*

The overarching factual issue for determination is whether Mr. Evitt added Bill Pay and overdraft protection to his account and then either made or authorized someone else to make the Bill Pay electronic transfers to the two Bank of America credit card accounts. For reasons set forth below, the Arbitrator finds that Claimant did not make or authorize the transactions.

The Arbitrator finds Mr. Evitt's testimony credible. There is no apparent reason or advantage to Mr. Evitt in making the transactions, and there is substantial disadvantage. He testified that defaulting on payments to Wells Fargo would risk his security clearance, necessary for his work, and so he and his wife are paying for the cash advances at extraordinary rates of interest. There is nothing in the record that suggests Mr. Evitt participated in a scam or fraud with the credit card holder or businesses identified in the statements or that he benefited from the transactions.

Wells Fargo relies heavily on its device ID for Mr. Evitt's computer for its conclusion the transactions were initiated from his device and because the device was not lost or stolen, only Mr. Evitt or someone with his authority could have made the transactions. However, the Arbitrator is not persuaded that the device ID cannot be discovered and replicated, faked or spoofed. Wells Fargo did not offer expert testimony from a computer scientist or IT professional for this proposition. It seems more probable than not that a device ID, like other personal information, can be stolen and used for nefarious purposes or that such an ID can be faked or spoofed like other identifying information such as Internet addresses and geographical information.

In the face of Mr. Evitt's protests that the transactions were not his, it is startling that Wells Fargo did not obtain the credit card statements for the Bank of America accounts. For purposes of the Electronic Funds Transfer Act, 15 U.S.C. § 1693a and Regulation E, 12 CFR § 1005.11, a financial institution's review of its own records regarding an alleged error generally satisfies the requirements for dispute resolution if the alleged error concerns a transfer to or from a third party; and there is no agreement between the institution and the third party for the type of electronic fund transfer involved. So the Bank of America statements may not have been required for regulatory purposes. But by not following through on its subpoena, it missed important evidence and the opportunity to investigate further the accounts into which the funds flowed, their owners and users, the businesses reflected on the statements as having received payments and the individuals named in connection with some of the $999+ electronic payments.

Washington Consumer Protection Act, RCW 19.86

Establishing a private claim under the WCPA requires proof of (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) a public interest impact; (4) injury to the plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 534 (Wash. 1986).

The public interest element may be met either by showing a *per se* violation of the WCPA or by satisfying factors relevant to the public interest element.

Claimant alleged a *per se* violation, *see* First Amended Complaint, ¶¶ 5.4-5.8. However, a per se violation requires Washington legislative declaration of public interest or a declaration that a violation of a statute is an unfair or deceptive act in trade or commerce or an unfair trade practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 786, 719 P.2d 531 (1986). Claimant did not cite any applicable Washington statute or establish a violation of such a statute. He cited only federal regulations 12 CFR § 1005.6(b)(1) and 12 CFR § 1005.11), and did not establish a violation of either.

When a claim is not based on a *per se* violation, a claimant must establish that "that the alleged act had the capacity to deceive a substantial portion of the public. *Hangman Ridge*, 719 P.2d at 535. Relevant factors include whether the alleged act is part of a pattern or generalized course of conduct; whether there were repeated acts committed prior to the act involving plaintiff; whether there is a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff; and if the act complained of involved a single transaction, whether many consumers were affected or likely to be affected by it. *Id.,* 719 P.2d at 537-38. There must be a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act being repeated. *Behnke v. Aherns*, 294 P.3d 729, 737 (Wn. App. 2021). The activity complained of cannot be "unique to the relationship between plaintiff and defendant." *Id.* at 736.

Claimant did not offer cognizable evidence of a pattern or generalized course of conduct. While he urged that Wells Fargo was in effect a "bad actor" with publicly known prior cases involving establishment by bank personnel of unauthorized customer accounts, he did not connect the conduct in those cases to wrongful conduct in this case. He did not establish that Wells Fargo's conduct with respect to him was part of a pattern or generalized course of wrongful conduct. He did not establish that Wells Fargo was responsible for unauthorized transactions in his account. Focusing on the Bank of America credit card statements, Claimant suggested that other persons named in the payment lines were "victims," but he did not establish that they were in fact "victims" at all or that they were victims of Wells Fargo rather the cardholder or someone else.

Claimant's CPA claim fails because he did not establish the public interest element of the WCPA.

## Breach of Contract

Claimant alleged he entered into agreements with Wells Fargo and that under these agreements Wells Fargo had a contractual duty to charge him only for authorized charges and not for unauthorized charges, that Wells Fargo breached its duty by charging for unauthorized charges and thereby damaged him.

Among the parties' agreements is the Deposit Account Agreement, effective October 15, 2021, upon which Well Fargo relied to establish the parties' agreement to arbitrate this dispute, initially submitted on November 2, 2022.

The Deposit Account Agreement also provides its customer with "Zero Liability protection." "With Zero Liability protection, you'll have no liability for any card transactions that you did not make or authorize," so long as the customer gives timely notice of the unauthorized transactions. Deposit Account Agreement at 16. To give timely notice of an unauthorized transaction, a customer must give notice within the 60 days after the statement showing the transaction was mailed or otherwise made available to him. Mr. Evitt gave timely notice on May 6, 2022, the day he discovered the transactions, three days after they were made, on the last day of the 04/07/2022-05/06/2022 billing period, before the statement for the period was issued.

Thus, under Zero Liability protection, Mr. Evitt should have had no liability for the 18 transactions that totaled $17,999.01. Instead Wells Fargo charged him $16,878.34 in credit card debt plus interest and refused to return $1,120.67 from his checking account. Claimant has paid money out of pocket and been damaged to that extent. He established Wells Fargo's breach of contract.

Wells Fargo should be required to comply with the terms of the parties' agreement such that Claimant has zero

liability for the 18 unauthorized transactions in his account totaling $17,999.01, should refund all amount paid by Mr. Evitt for the purported cash advances and should be precluded from collecting any additional amounts from Claimant for those advances.

As Wells Fargo established at the evidentiary hearing, the Deposit Account Agreement also provides that each party will pay its own attorney, expert and witness fees: "Unless applicable laws state otherwise, each party will pay its own attorney, expert and witness fees. This rule applies no matter which party wins arbitration." Deposit Account Agreement at 35. Claimant did not offer any applicable law providing for a fee award in connection with a breach of contract action.

Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)

Although Claimant pled a violation of the Fair Credit Reporting Act, 15 U.S.C. §16812-2b, he did not offer evidence of violations by Wells Fargo, information actually reported to credit agencies, reports by them or damages caused by any such violation and accordingly, no relief is granted in connection with this claim.

*Final Award*

NOW THEREFORE, Claimant Michael Evitt is awarded damages of $ 10,500. Wells Fargo is ordered to refund all amounts in excess of $10,500 paid by Mr. Evitt for the purported cash advances, remove the debt from his credit card account, refrain from collecting monthly payments from Mr. Evitt, cease reporting the debt to credit reporting agencies and report the dispute between Mr. Evitt and Wells Fargo as resolved in his favor.

The Arbitrator recommends entry of a judicial injunction consistent herewith.

The administrative fees of the American Arbitration Association totaling $2,400.00 shall be borne as incurred, and the compensation and expenses of the arbitrator totaling $5,133.22 shall be borne as incurred.

The above sums are to be paid on or before 15 days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

November 17, 2023
Date

Katherine Hendricks, Arbitrator

# EXHIBIT

# B



# WELLS FARGO

# PLATINUM CARD

...3950


**Make Payment**


**View Statements**


**Manage Alerts**


**Find My Deals**

Outstanding balance      **$14,326.11**

Available credit      $4,173.00

**Minimum payment (due on 12/01/23)**      **$505.00**

Show more detail

     Transactions     Payments   C

Pending transactions

Show more detail


Accounts


Make Payment

≡
Menu

# EXHIBIT

# C

← **Your credit reports**



**∴e** Experian     **EQ** Equifax     **ₜᵤ** TransUnion

## Experian credit report

MICHAEL A EVITT

As of Nov 30, 2023 ⌄



**FICO** SCORE 8 ⓘ               Experian data Nov 30, 2023

**VERY GOOD**

300                                           850

## Personal information



**NAME**

MICHAEL A EVITT

**ALSO KNOWN AS**

-

**GENERATIONAL IDENTIFIER**

-

**YEAR OF BIRTH**

**ADDRESSES**

**EMPLOYERS**

**See what you're missing!** You have 35 matched credit card offers.    **See Matches**   ✕

**PERSONAL STATEMENTS**

06& 01-24-23 0000000 ID FRAUD VICTIM ALERT FRAUDULENT APPLICATIONS MAY BE SUBMITTED IN MY NAME OR MY IDENTITY MAY HAVE BEEN USED WITHOUT MY CONSENT TO FRAUDULENTLY OBTAIN GOODS OR SERVICES. DO NOT EXTEND CREDIT WITHOUT FIRST CONTACTING ME PERSONALLY AND VERIFYING ALL APPLICATION INFORMATION AT DAY 360-286-4149 OR EVENING 360-876-1786 . THIS VICTIM ALERT WILL BE MAINTAINED FOR SEVEN YEARS BEGINNING 01-24-23.

## Quick actions



**Your credit file is unlocked**

Manage Experian CreditLock



**Print your report**

Open a printable version

**File a dispute**

Visit the dispute center

 **Build credit without debt!⁰ Meet the Experian Smart Money™ Digital Checking Account.**

Banking services provided by Community Federal Savings Bank, Member FDIC. Experian is not a bank.

### Credit cards or credit lines







 **See what you're missing!** You have 35 matched credit card offers.



WF CRD SVC

⬡ Link card name

Balance                                    **$14,326**

Balance updated                            **Nov 06, 2023**

You could improve your credit usage and increase your FICO® Score with a new card. Check out offers matched just to you.

Explore credit cards



**See what you're missing!** You have 35 matched credit card offers.



**Personal Credit Report for:**
MICHAEL EVITT

**File Number:**
█████████

**Date Created:**
12/07/2023

A quick heads up:

**Your credit score is not included with your TransUnion credit report.**

# Your TransUnion Credit Report

**Found something inaccurate on your credit report?**
Visit transunion.com/dispute to start a dispute online.

## 👤 Personal Information

Your SSN has been masked for your protection.



**Credit Report Date**
12/07/2023

**Social Security Number**
XXX-XX-████

**Date of Birth**
████████

**Name**
MICHAEL ANTHONY EVITT

Feedback

## Addresses



Current Address
████████████████████████

Date Reported
████████

████████████

████████████████████████

Date Reported



Other Address

Date Reported

Date Reported

## Phone Numbers



Phone Number

Phone Number

## 🏛 Accounts

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below m
not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, paym
dates, remarks, ratings, etc. The rating key is provided to help you understand some of the account information that could be repo
Pay Status represents the current status of accounts and indicates how you are currently paying. For accounts that have been pa
and closed, sold, or transferred, Pay Status represents the last reported status of the account.

**Payment/Remarks Key**

### Ratings

| | |
|---|---|
| OK | Current, paying or paid as agreed |
| N/R | Not Reported |
| X | Unknown |
| 30 | Account 30 days late |
| 60 | Account 60 days late |
| 90 | Account 90 days late |
| 120 | Account 120 or more days late |
| COL | Transferred to collection |

| November 2015 | December 2015 | January 2016 | February 2016 | March 2016 | April 2016 | May 2016 |
|---|---|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

| June 2016 | July 2016 | August 2016 | September 2016 | October 2016 | November 2016 | December 2016 |
|---|---|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

| January 2017 | February 2017 | March 2017 | April 2017 | May 2017 | June 2017 | July 2017 |
|---|---|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

| August 2017 | September 2017 | October 2017 | November 2017 | December 2017 | January 2018 | February 2018 |
|---|---|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

| March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 |
|---|---|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

| October 2018 | November 2018 | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 |
|---|---|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

| May 2019 | June 2019 | July 2019 | August 2019 | September 2019 |
|---|---|---|---|---|
| Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** | Rating **OK** |

Total Months: 61

**WELLS FARGO CARD SERVICES** 50983****

## Account Information

| Address | PO BOX 14517 DES MOINES, IA 50306 |
|---|---|
| **Phone** | (855) 854-3502 |
| **Monthly Payment** | $505 |
| **Date Opened** | 10/10/2019 |
| **Responsibility** | Individual Account |
| **Account Type** | Revolving Account |
| **Loan Type** | CREDIT CARD |
| **Balance** | $14,326 |
| **Date Updated** | 11/06/2023 |
| **Payment Received** | $528 |
| **Last Payment Made** | 11/01/2023 |
| **High Balance** | $17,311 |
| **Credit Limit** | $18,500 |
| **Pay Status** | Current; Paid or Paying as Agree |
| **Terms** | $505 per month; paid Month |

Payment History

| November 2019 | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 | May 2020 |
|---|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating | Rating |
| **OK** | **OK** | **OK** | **OK** | **OK** | **OK** | **OK** |

| June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | December 2020 |
|---|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating | Rating |
| **OK** | **OK** | **OK** | **OK** | **OK** | **OK** | **OK** |

EXHIBIT

E

# EXHIBIT

# D



 **Need to add another item to your dispute?**

If you want to dispute additional item(s), use the "Add" button below to add to your dispute request. Once you've selected all the items you'd like to dispute, you'll be able to review your entire dispute request on this page before you submit it.

ADD ANOTHER ITEM

**The items you've added to this dispute request are listed below, but you have not submitted your dispute yet! Please review your requested updates for accuracy before you submit your dispute.**

🏛 **Accounts**



**Item:**
WELLS FARGO CARD SERVICES 446542050983****

**Reasons:**
This account was opened fraudulently

**Additional comments:**
I do not owe this debt.

| ADD ANOTHER ITEM | SUBMIT DISPUTE |

# EXHIBIT

# E



# Your Dispute Results

Report Created On: 12/06/2023
File Identification Number: 000430910991
Provided by TransUnion Consumer Relations

## Your Investigation Results

INVESTIGATION RESULTS - VERIFIED AS ACCURATE and UPDATED: The disputed item(s) was verified as accurate; however, other information has also changed.

We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE; however, we updated: **Historical Trended Data**. Here is how this account appears on your credit report following our investigation.

WELLS FARGO CARD SERVICES
PO BOX 14517
DES MOINES, IA 50306

### Account Details

| | |
|---|---|
| Account Number | 446542050983**** |
| Name | WELLS FARGO CARD SERVICES<br>PO BOX 14517 DES MOINES, IA 50306<br>(855) 854-3502 |
| Date Opened | 10/10/2019 |
| Responsibility | Individual Account |
| Account Type | revolving |
| Loan Type | CREDIT CARD |

Feedback

| | |
|---|---|
| Balance | $14,326 |
| Last Payment Amount | $528 |
| Original Amount | $17,311 |
| Credit Limit | $18,500 |
| Pay Status | Current; Paid or Paying as Agreed |
| Terms | $505 per month, paid Monthly |
| Last Payment Date | 11/01/2023 |

## Payment History

| Rating | |
|---|---|
| Oct 2023 | Current |
| Sep 2023 | Current |
| Aug 2023 | Current |
| Jul 2023 | Current |
| Jun 2023 | Current |
| May 2023 | Current |
| Apr 2023 | Current |
| Mar 2023 | Current |
| Feb 2023 | Current |
| Jan 2023 | Current |
| Dec 2022 | Current |
| Nov 2022 | Current |
| Oct 2022 | Current |