SaraEllen Hutchison (WSBA # 36137)
LAW OFFICE OF SARAELLEN HUTCHISON, PLLC
1102 A ST STE 300 PMB 66
Tacoma, WA 98402
Telephone:    206-529-5195
Email:        saraellen@saraellenhutchison.com

Robert W. Mitchell (WSBA #37444)
ROBERT W. MITCHELL, ATTORNEY AT LAW, PLLC
1020 N. Washington, Spokane, WA  99201
Telephone:    360-993-5000
Email:        bobmitchellaw@yahoo.com

*Attorneys for Plaintiff, Michael Evitt*

THE HONORABLE JUDGE SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL EVITT,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO BANK NA,<br><br>　　　　　　Defendant. | No. 3:23-CV-06121-BHS<br><br>**PLAINTIFF'S TRIAL BRIEF** |

PLAINTIFF, through counsel, respectfully submits the following Trial Brief.

## I.    INTRODUCTION

At trial, Plaintiff MICHAEL EVITT ("Mr. Evitt") will pursue the following claims against Defendant, Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"): Furnisher liability under the Fair Credit Reporting Act ("FCRA"), at 15 U.S.C. § 1681s-2(b), on both negligence under 15 U.S.C. § 1681o, and willfulness under 15 U.S.C. § 1681n. *See* ECF No. 1, Complaint.

## II.    FACTS

***The Background of the identity theft perpetrated against Plaintiff:***

1. Mr. Evitt maintained a checking account with Wells Fargo since 1996.

2. Mr. Evitt is an honorably discharged veteran of the U.S. Army Special Forces, with a service-connected disability.

3. Mr. Evitt works in cybersecurity for the Navy, where he protects our nation's nuclear secrets from our enemies.

4. On <u>April 28, 2022</u>, a fraudster hacked Mr. Evitt's Wells Fargo account.

5. On <u>April 28, 2022</u>, the fraudster established overdraft protection on Mr. Evitt's Wells Fargo credit card, which ensured that any overdraft from Mr. Evitt's checking account would be charged to Mr. Evitt's Wells Fargo credit card.

6. On <u>April 28, 2022</u>, the fraudster then scheduled 18 separate bill pay transactions from Mr. Evitt's Wells Fargo checking account to two Bank of America credit cards associated with Ferrell Calhoun, an individual residing in Florida.

7. On <u>May 3, 2022</u>, Wells Fargo transferred 18 separate payments of just under $1,000.00 each, totaling $17,999.01, from Mr. Evitt's Wells Fargo checking account, to pay Ferrell Calhoun's Bank of America credit cards.

8. On <u>May 3, 2022</u>, because the fraudster established overdraft protection, after all the funds from Mr. Evitt's checking account were depleted, cash advances totaling $16,878.34 were added by Wells Fargo as charges to Mr. Evitt's Wells Fargo credit card.

9. Mr. Evitt did not establish bill pay nor overdraft protection, nor did he authorize Ferrell Calhoun, nor anyone else, to do so.

10. On <u>May 6, 2022</u>, Mr. Evitt discovered the fraud.

11. On <u>May 6, 2022</u>, Mr. Evitt filed a police report with the Kitsap County Sheriff.

PLAINTIFF'S TRIAL BRIEF — 2

12. On May 6, 2022, Mr. Evitt telephoned Wells Fargo and lodged a formal fraud complaint and fraud dispute.

13. On May 6, 2022, Mr. Evitt physically appeared at a Bank of America branch to report and dispute the fraudulent transactions.

14. On May 14, 2022, at Wells Fargo's request, Mr. Evitt completed an affidavit of online fraud and sent it to Wells Fargo.

15. On May 19, 2022, Wells Fargo mailed a letter to Mr. Evitt stating that Wells Fargo concluded that Mr. Evitt, or someone he knows, authorized the fraudulent transactions.

16. On May 23, 2022, Mr. Evitt filed a complaint with the Office of the Comptroller of the Currency ("OCC").

17. On May 28, 2022, the OCC forwarded Mr. Evitt's complaint to Wells Fargo.

18. On May 28, 2022, Mr. Evitt filed a complaint with the Consumer Financial Protection Bureau ("CFPB").

19. On May 28, 2022, the CFPB forwarded Mr. Evitt's complaint to Wells Fargo.

20. On May 29, 2022, Mr. Evitt filed a complaint with the Federal Trade Commission.

21. On May 31, 2022, Wells Fargo sent a letter to Mr. Evitt acknowledging receipt of his complaint filed with the CFPB, and promised to investigate.

22. On June 3, 2022, Wells Fargo mailed Mr. Evitt a letter stating that Mr. Evitt made or authorized the fraudulent transactions.

23. Wells Fargo continued to hold Mr. Evitt responsible for the credit card balance and continued to require that Mr. Evitt make monthly payments on the fraudulent credit card balance.

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

24. Mr. Evitt made minimum payments of over $500.00 per month for 18 months, on the fraudulent balance.

25. On June 10, 2022, Wells Fargo mailed a letter to Mr. Evitt and the CFPB, stating that Wells Fargo denied Mr. Evitt's claim, and alleged that Mr. Evitt either made the transactions or authorized someone to do so.

26. Later in June of 2022, Mr. Evitt requested the records from Wells Fargo that were referenced in Wells Fargo's June 10, 2022, denial letter.

27. On June 17, 2022, Mr. Evitt contacted Wells Fargo and filed his third fraud dispute and request for investigation.

28. On June 24, 2022, Wells Fargo sent Mr. Evitt an email denying the fraud and informing Mr. Evitt that he needed to address his fraud concerns to Bank of America, an institution with which Mr. Evitt has never had an account nor engaged in any business transactions.

29. On June 28, 2022, Mr. Evitt received a letter from Wells Fargo, along with documents related to Wells Fargo's fraud investigation.

30. The documents Wells Fargo provided revealed that, to make the 18 fraudulent transactions, the fraudster accessed Mr. Evitt's Wells Fargo account from a:

    a. New City;
    b. New IP Address; and a
    c. New Geographical location (multiple locations, including out-of-state locations).

31. On June 28, 2022, Wells Fargo was still credit reporting the fraudulent account balance of $17,311.00, on Mr. Evitt's Experian credit report.

32. On June 28, 2022, Mr. Evitt's Experian credit score was 730 "good".

PLAINTIFF'S TRIAL BRIEF — 4

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

33. On <u>December 19, 2023</u>, *after* Wells Fargo credit reported a reduced, but still fraudulent account balance of $348, Mr. Evitt's Experian credit score to 825 "**Exceptional**."

34. On <u>July 22, 2022</u>, Mr. Evitt served Wells Fargo with an unfiled copy of a State Court lawsuit.

35. Mr. Evitt's lawsuit contained a detailed description of Mr. Evitt's fraud claims.

36. Wells Fargo continued credit reporting the fraudulent credit card balance.

37. On <u>August 25, 2022</u>, Wells Fargo served Mr. Evitt with an answer to his State Court lawsuit.

38. Wells Fargo's answer accused Mr. Evitt of acting in "bad faith," acquiescing or consenting to the fraud, breaching a contract, and having "unclean hands."

39. On <u>October 18, 2022</u>, Wells Fargo demanded that Mr. Evitt file his lawsuit with the Court.

40. On <u>November 2, 2022</u>, Wells Fargo filed a demand for arbitration.

41. On <u>January 5, 2023</u>, Wells Fargo filed a Motion to Compel Arbitration and to *dismiss* Mr. Evitt's State Court case.

42. Wells Fargo's motion also requested that the Court order Mr. Evitt to pay Wells Fargo's attorney's fees and costs.

43. When Wells Fargo filed its Motion to Compel Arbitration (a public record document), Wells Fargo filed a document containing the following personal identifiers for *both* Mr. Evitt *and* his mother:

    a. Complete, unredacted ACCOUNT NUMBER.

    b. Unredacted Bank Account Numbers.

PLAINTIFF'S TRIAL BRIEF     5     Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

    c. Unredacted CUSTOMER NUMBERS.

    d. Unredacted DATES OF BIRTH.

    e. Unredacted SOCIAL SECURITY NUMBERS.

    f. Unredacted DRIVER'S LICENSE NUMBERS.

    g. Unredacted TELEPHONE NUMBERS.

    h. Unredacted HOME ADDRESSES.

    i. Unredacted Signatures.

44. On <u>January 9, 2023</u>, Mr. Evitt filed a dispute with Equifax, a Credit Reporting Agency.

45. Mr. Evitt's disputes included:

    A) A copy of the Police Report Mr. Evitt filed with Kitsap County;

    B) Mr. Evitt's complaint to the Consumer Financial Protection Bureau;

    C) Mr. Evitt's complaint to the Federal Trade Commission;

    D) Mr. Evitt's complaint to the Office of the Comptroller of the Currency; and

    E) Mr. Evitt's Online Affidavit of Fraud filed with Wells Fargo.

46. Equifax forwarded Mr. Evitt's disputes to Wells Fargo.

47. In <u>February of 2023</u>, Mr. Evitt filed a Motion for Injunctive Relief/Temporary Restraining Order with the State Court, seeking an Order preventing Wells Fargo from continuing to collect the fraudulent debt.

48. The Motion for Injunctive Relief contained a detailed explanation of the fraud.

49. Wells Fargo continued forcing Mr. Evitt to make $500.00 per month payments on the fraudulent account balance.

PLAINTIFF'S TRIAL BRIEF — 6

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

50. Wells Fargo also added late payment fees and significant interest charges to the fraudulent account balance.

51. The State Court compelled the case to arbitration.

***Plaintiff Prevailed Against Wells Fargo at Arbitration:***

52. Mr. Evitt provided Wells Fargo and the arbitrator with all documents referenced above, along with an arbitration memorandum explaining the dispute and the supporting documentation.

53. In <u>August of 2023</u>, Mr. Evitt and Wells Fargo arbitrated the dispute.

54. The arbitration lasted two days.

55. During those two days, Mr. Evitt again explained in detail that he was the victim of fraud and did not owe the fraudulent account balance.

56. At the end of arbitration, Wells Fargo's closing statements were:

> Why did Mr. Evitt do this? I – I can't answer that for him. We have heard that he's a cybersecurity expert, that he's familiar with fraud. If he wanted to make this look unauthorized, if I were trying to make this look unauthorized, doing this in 18 different transactions will probably, you know, as they've argued, look more suspicious than a single large transaction. I don't - - I'm not in Mr. Evitt's head. So I - - I cannot explain. Maybe he thought he could get away with it because of his expertise. Maybe he thought he could beat the system. Clearly, he didn't know about device IDs, but, you know, different - - different login locations, I - - that would be speculation. I can't answer what his motives are or why he would have done this. But we are going by the facts that we have. And the facts that we have establish conclusively that these transactions were not unauthorized…

57. On <u>September 14, 2023</u>, Mr. Evitt filed an "IC3" complaint against Wells Fargo with the Federal Bureau of Investigation.

PLAINTIFF'S TRIAL BRIEF — 7

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

58. On November 17, 2023, despite Wells Fargo's repeated allegations that Mr. Evitt himself was the fraudster, the arbitrator issued an Award and ordered Wells Fargo to:

   a. Pay Mr. Evitt damages in the amount of $10,500.00;

   b. Refund Mr. Evitt for all amounts in excess of the $10,500.00 Mr. Evitt paid toward the fraudulent cash advances and/or billpay transactions;

   c. Remove the debt from Mr. Evitt's credit card account;

   d. Cease collecting monthly payments;

   e. Cease credit reporting the fraudulent balance; and

   f. Credit report the dispute as resolved in Mr. Evitt's favor.

59. On November 23, 2023, Mr. Evitt filed a motion with the State Court to Confirm the Arbitrator's Award.

60. On November 29, 2023, Mr. Evitt filed another Motion for Temporary Restraining Order with the State Court.

***Despite Defendant's Extensive and Detailed Knowledge of the Identity Theft and a Full Arbitration where Plaintiff Prevailed, Defendant Willfully Ignored What it Already Knew:***

61. On November 30, 2023, Wells Fargo continued credit reporting the fraudulent debt on Mr. Evitt's Trans Union credit report.

62. On November 30, 2023, Mr. Evitt filed another dispute with Trans Union.

63. Trans Union notified Wells Fargo of Mr. Evitt's dispute.

64. On December 1, 2023, Wells Fargo demanded that Mr. Evitt provide an IRS Form W-9 for the $10,500.00 refund check, which was a refund, *not* a taxable event.

PLAINTIFF'S TRIAL BRIEF    8

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

65. On December 6, 2023, Wells Fargo was still credit reporting the fraudulent account balance on Mr. Evitt's credit report.

66. On December 6, 2023, Wells Fargo responded to Trans Union, stating that the fraudulent account balance was "**VERIFIED AS ACCURATE**."

67. On December 6, 2023, Wells Fargo also sent Mr. Evitt a bill demanding a $505.00 monthly payment.

68. The December 6, 2023 bill represented that Mr. Evitt missed his December payment.

69. The December 6, 2023 bill stated that Mr. Evitt still owed a balance for the fraudulent.

70. On December 6, 2023, Wells Fargo filed a response to Mr. Evitt's Motion for Temporary Restraining Order.

71. On December 7, 2023, Wells Fargo added an interest charge of $348.56, to the fraudulent account balance.

72. On December 8, 2023, Mr. Evitt filed this Federal lawsuit.

73. On December 8, 2023, Wells Fargo drafted the $10,500.00 check to Mr. Evitt.

74. On December 13, 2023, Wells Fargo mailed the $10,500.00 check to Mr. Evitt.

75. On December 19, 2023, *after* Wells Fargo ceased credit reporting the fraudulent account balance, Mr. Evitt's Experian credit score increased to 825 "Exceptional."

76. On December 20, 2023, Wells Fargo filed a supplemental response in opposition to Mr. Evitt's State Court Motion for Temporary Restraining Order.

### III.   CLAIMS

At trial, Plaintiff will pursue the following claims:

**A.   Fair Credit Reporting Act - 15 U.S.C. § 1681s-2(b) - *Liability*.**
PLAINTIFF'S TRIAL BRIEF   9

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

Plaintiff's Fair Credit Reporting Act ("FCRA") claim presents the legal question of whether Defendant conducted a reasonable reinvestigation in response to Plaintiff's disputes to Trans Union, and whether Defendant accurately reported the account when Defendant "VERIFIED" a fraudulent credit card balance as "ACCURATE" *after* receiving Plaintiff's disputes, and whether Defendant failed to ensure maximum possible accuracy of the information Defendant credit reported about Plaintiff.  15 U.S.C. § 1681s-2(b).

The <u>reasonableness</u> of Defendant's investigation is a question of fact for the jury to determine.  *Gorman v. Walpoff & Abramson, L.L.P.*, 584 F.3d 1147, 1157 (9th Cir. 2009).

**B.**     **FCRA - 15 U.S.C. § 1681n –** ***Damages for Negligent Noncompliance***.

Plaintiff's FCRA claim presents the question of damages, which include actual out-of-pocket damages, plus emotional distress damages, for negligent noncompliance.  *See* 15 U.S.C. § 1681o.  *See Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (holding that the FCRA provides for an award of emotional distress damages, even in the event that Plaintiff fails to prove out-of-pocket damages.).

Plaintiff's damages for negligent non-compliance are a question of fact for the jury to determine.  *Guimond*, 45 F.3d, at 1333.

**C.**     **FCRA - 15 U.S.C. § 1681o –** ***Damages for Willful Noncompliance***.

Plaintiff's FCRA claims present the additional question of whether Defendant's violations were "willful."  *See* 15 U.S.C. § 1681o.  In addition to the requirement under 15 U.S.C. § 1681s-2(b)(1)(b) that the furnisher consider all information forwarded by the CRA, the furnisher cannot ignore what it already knows; "In deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the

investigation once undertaken." *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147 n.11 (9th Cir. 2009); see also *McDonald v. OneWest Bank,* 2013 U.S. Dist. LEXIS 31787 at *13 (W.D. Wash. Mar. 7, 2013) (furnisher "did nothing more than compare the points of data provided by the CRA with its own records"). Other district courts in the Ninth Circuit have agreed that the furnisher cannot just look at what the CRA sent it: "…Defendant should have considered information it received directly from Plaintiff…." *Kim v. BMW Fin. Servs, NA, LLC,* 142 F. Supp. 3d 935 (C.D. Cal. 2015), aff'd sub nom., *Seguntae Kim v. Bmw Fin. Servs. Na Llc,* 702 Fed. Appx. 561 (9th Cir. 2017). A mere "data conformity" reinvestigation is not reasonable, and can qualify as reckless disregard of the requirements of the FCRA. In *Daugherty v. Equifax Info. Servs, LLC,* 2015 U.S. Dist. LEXIS 114679 at *27 (S.D. W. Va. Oct. 26, 2015) the court denied summary judgment to the furnisher because its reinvestigations were only "brief reviews of internal records," not accounting for additional information available to it. While the actual damages in that case were only $6,128, the jury awarded $2,500,000 in punitive damages. *Daugherty v. Ocwen Loan Servicing, LLC,* 2016 U.S. Dist. LEXIS 159583 (S.D. W. Va. Oct. 12, 2016); see also *Daugherty v. Ocwen Loan Servicing, LLC,* 701 Fed. Appx. 246, 249 (4th Cir. 2017) (affirming compensatory damages and determination of willfulness but reducing amount of punitive damages). See also, *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 71 (2007) ("The Court of Appeals correctly held that reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."). And see, *Rodriguez v. Experian Info. Sols., Inc.,* 2017 U.S. Dist. LEXIS 163695 at *10 – 12 (W.D. Wash., Oct. 3, 2017) (company that obtained consumers' credit reports had an "objectively unreasonable" reading of the FCRA, and whether that was reckless was a fact question for the jury.) In summary, furnishers must act in

PLAINTIFF'S TRIAL BRIEF      11

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

good faith to seek the truth, and not simply check the box on the ACDV that states the account is "verified."

A finding of willful noncompliance supports a claim for punitive damages. The issue of willfulness is a question of fact for the jury to determine. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 71, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007); *Guimond*, 45 F.3d 1333; *Drew v. Equifax Info. Servs., L.L.C.*, 690 F.3d 1100 (9th Cir. 2012); *Grigoryan v. Experian Info. Sols., Inc.,* 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014).

The appropriate amount of punitive damages is a question of fact for the jury to determine. *Ibid*.

D.   **FCRA - 15 U.S.C. § 1681n(a)(1)(A) –** *Statutory Damages in the absence of Actual Damages*.

Plaintiff's FCRA claims present the issue of statutory damages. *See* 15 U.S.C. § 1681n(a)(1)(A). Even in the absence of actual damages, Plaintiff is entitled to "damages of not less than $100 and not more than $1,000." *Id*. Statutory damages are awarded by the Jury.

## IV.   DEFENSES

Wells Fargo has no remaining affirmative defenses. *See* Dkt. 26 (Order granting Summary Judgment to Mr. Evitt on Wells Fargo's Affirmative Defenses).

Wells Fargo can be expected to defend the "reasonableness" of its actions, as well as Plaintiff's damages.

Wells Fargo also can be expected to seek Setoff for settlements. Setoff is not available under this statutory scheme, nor under the facts of this case. *See* ECF No. 28, Plaintiff's Motions in Limine, p. 2 (¶¶ a. and h.); pp. 4-6 (¶¶ a. – b.); and p. 10-11 (¶¶ f. – g). Additionally, non-

PLAINTIFF'S TRIAL BRIEF    12

settling defendants are not entitled to a setoff or indemnification under the FCRA. *See Nelson v. Equifax Info. Servs. LLC*, 2010 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007) (citing: *McMillan v. Equifax Credit Information Services, Inc.,* 153 F.Supp.2d 129, 132 (D.Conn. 2001); *Irwin v. Mascott,* 94 F.Supp.2d 1052, 1058 (N.D.Cal. 2000); *Kay v. First Continental Trading, Inc.,* 966 F.Supp. 753, 754-55 (N.D.Ill. 1997) (holding: "Defendant's argument that the damages award should be offset by the Equifax settlement is unpersuasive…There is no equitable offset for either of these causes of action…Nor does Defendant present any evidence that federal common law creates such a right. Accordingly, the Court finds that no offset is warranted by virtue of Plaintiffs settlement with Equifax."). The "FCRA does not provide that a nonsettling joint tortfeasor is entitled to any sort of credit as Palacios implies; rather, the language of the statute essentially provides that "any person" who is liable will pay any and all damages..." *See Gonzales v. Bank of America*, No. CIV S-10-2143 KJM-EFB (E.D. Cal. Dec. 22, 2011) (citing: *Irwin v. Mascott,* 94 F. Supp. 2d 1052, 1058-59 (N.D. Cal. 2000).

## V.   ISSUES OF LAW

The jury will determine the following issues of law:

1. Did Wells Fargo negligently violate the Fair Credit Reporting Act ("FCRA"), at 15 U.S.C. § 1681s-2(b), when Wells Fargo falsely "verified" the fraudulent credit card balance as "accurate?"

2. Did Wells Fargo willfully violate the Fair Credit Reporting Act at 15 U.S.C. § 1681s-2(b) (FCRA) when Wells Fargo falsely "verified" the fraudulent credit card balance as "accurate?"

3. How much should Wells Fargo pay Mr. Evitt to compensate him for the actual damage

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com

and injury caused by Wells Fargo's violations?

4. How much should Wells Fargo pay Mr. Evitt to compensate him for the actual damage and injury caused by Wells Fargo's willful violation(s)?

5. In the absence of actual damages, what is the appropriate statutory damage award (between $100 and $1,000)?

6. What is the appropriate punitive damage award?

The following are issues to be determined by the Court:

1. The appropriate award for prejudgment and post-judgment interest, in the event the jury finds for Plaintiff on any issue.

2. The amount of Plaintiff's reasonable costs and attorney fees, in the event the jury finds for Plaintiff on any issue, pursuant to 15 U.S.C. 1681n/o.

## VI. WITNESSES

**Plaintiff WILL Call:**

**Defendant, Wells Fargo** will testify regarding the facts alleged in the Complaint.

**Plaintiff, Michael Evitt** will testify regarding the facts alleged in the Complaint, the impact of Defendant's conduct on him and his family, his economic and non-economic damages directly and proximately caused by Defendant's conduct, and the need for punitive damages.

**Plaintiff's Spouse, Ariel Oksendahl** will testify regarding the facts alleged in the Complaint, the impact of Defendant's conduct on her, Plaintiff, and their family, the economic and non-economic damages directly and proximately caused by Defendant's conduct, and the need for punitive damages.

PLAINTIFF'S TRIAL BRIEF     14

**Plaintiff MAY Call:**

**A Representative of Trans Union** may testify to: 1) Plaintiff's disputes to Trans Union; 2) Trans Union forwarding those disputes to Defendant; 3) Trans Union relying upon Defendant to conduct a reasonable reinvestigation in response to Plaintiff's disputes; 4) Defendant's duty to ensure maximum possible accuracy of the information it reported about Plaintiff; 5) How the tradeline adversely affected Plaintiff's Trans Union credit score; 6) Trans Union's credit scoring algorithms.

**Defendant, Wells Fargo WILL Call:**

**Plaintiff, Michael Evitt** will testify regarding the facts alleged in the Complaint, the impact of Defendant's conduct on him and his family, his economic and non-economic damages directly and proximately caused by Defendant's conduct, and the need for punitive damages.

**Wells Fargo** has failed to name a witness to testify on behalf of Wells Fargo, other than to state: "**Wells Fargo through representative.**"

## VII.   CONCLUSION

This trial involves simple questions of whether Defendant conducted an unreasonable investigation of a credit report disputes, and whether it did so willfully -- given the lengthy history of Plaintiff's direct disputes and arbitration with Defendant -- and what damages are appropriate. The witnesses and issues presented will be few, and the trial should be fairly straightforward.

Dated this 19th day of August, 2025 at Tacoma, Washington by

S//*SaraEllen Hutchison*
SaraEllen Hutchison (WSBA # 36137)
LAW OFFICE OF SARAELLEN HUTCHISON, PLLC

PLAINTIFF'S TRIAL BRIEF        15

```
1  1102 A ST STE 300 PMB 66
   Tacoma, WA 98402
2  Telephone:    206-529-5195
   Email:        saraellen@saraellenhutchison.com
3
   s//Robert W. Mitchell
4  _____
   Robert W. Mitchell (WSBA #37444)
5  ROBERT W. MITCHELL, ATTORNEY AT LAW, PLLC
   1020 N. Washington, Spokane, WA  99201
6  Telephone:    (360) 993-5000
   Email:        bobmitchellaw@yahoo.com
7  Attorneys for Plaintiff, Michael Evitt
```

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2025, the foregoing was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

Dated this 19th day of August, 2025 at Tacoma, Washington.

```
                    S//SaraEllen Hutchison
                    _____
                    SaraEllen Hutchison (WSBA # 36137)
                    LAW OFFICE OF SARAELLEN HUTCHISON, PLLC
                    1102 A ST STE 300 PMB 66
                    Tacoma, WA 98402
                    Telephone:    206-529-5195
                    Email:        saraellen@saraellenhutchison.com
```

PLAINTIFF'S TRIAL BRIEF — 16

PLAINTIFF'S TRIAL BRIEF    17

Law Office of SaraEllen Hutchison, PLLC
1102 A ST STE 300 PMB 66 | Tacoma, WA 98402
Ph (206) 529-5195 | Fax (253) 302-8486
saraellen@saraellenhutchison.com